Stacy Wihebrink

1

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION


STACY WIHEBRINK, Individually and on

Behalf of All Others Similarly Situated          PLAINTIFF


VS.                    NO. 4:21-CV-573-DPM


LIFE STRATEGIES COUNSELING, INC.                 DEFENDANT


ORAL DEPOSITION

OF

STACY WIHEBRINK

TAKEN MARCH 21, 2023, AT 10:37 A.M.


Conway Court Reporting

21043 Natalie Lane

Little Rock, Arkansas   72206


www.conwaycourtreporting.com


"Spoken to written . . . word for word"


Conway Office: 501.679.1488   Little Rock Office:  501.319.4807



95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

2

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:


MR. COLBY QUALLS

SANFORD LAW FIRM, PLLC

10800 FINANCIAL CENTRE PARKWAY, SUITE 510

LITTLE ROCK, ARKANSAS 72211

colby@sanfordlawfirm.com


ON BEHALF OF THE DEFENDANT:


MR. MARK MAYFIELD

WOMACK, PHELPS, PURYEAR, MAYFIELD & McNEIL, P.A.

P.O. BOX 3077

JONESBORO, ARKANSAS 72403

mmayfield@wpmfirm.com


CONWAY COURT REPORTING - 501.679.1488 or 501.319.4807

www.conwaycourtreporting.com

Conway Court Reporting

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

4

C A P T I O N

ANSWERS AND ORAL DEPOSITION OF STACY WIHEBRINK, a witness produced at the request of the Defendant, taken in the above-styled and numbered cause on the 21st day of March, 2023, at 10:37 a.m., at the law offices of Sanford Law Firm, 10800 Financial Centre Parkway, Suite 510, Little Rock, Arkansas, pursuant to the Federal Rules of Civil Procedure.

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

5

```
 1                    P R O C E E D I N G S

 2          THEREUPON,

 3                         STACY WIHEBRINK,

 4                THE WITNESS HEREINBEFORE NAMED, having

 5            been first duly cautioned and sworn by me

 6            to testify to the truth, the whole truth,

 7            and nothing but the truth, testified on her

 8            oath as follows, to-wit:

 9                         EXAMINATION

10   BY MR. MAYFIELD:

11   Q    Will you please state your name for the record, ma'am.

12   A    Stacy Wihebrink.
```

Conway Court Reporting

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

24

1    Q    And looking here, if we go to Exhibit 4, do you recognize

2    that document?

3    **A**    I do not.

4    Q    Okay.  On the second page of -- actually, the last page of

5    Exhibit 4 there is a signature.  It looks like it says your

6    name.  Did you sign that?

7    **A**    Yes.

8    Q    Okay.  And so while it may not be familiar with you now,

9    back then it looks like something that you had been given and

10   signed; correct?

11   **A**    Yes.

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

25

7    Q    All right.  Let's go the second time around and go to

8    Exhibit 7.  Exhibit 7 looks a lot like Exhibit 1 I'll represent

9    to you.  But on the second page of Exhibit 7, is that your

10   signature?

11   **A**    Yes.

12   Q    And what date did you -- is listed as the acceptance date?

13   **A**    January 9th, 2020.

14   Q    Is that your handwriting?

15   **A**    Yes.

16   Q    Okay.  And so as I understood this Exhibit 7, it starts

17   out that -- and I'm just going to read a part of it.  We would

18   like to extend an offer of employment as a mental health

19   professional at a billable hour rate of $50.  And then it's got

20   some contingencies with respect to that.  When you went back to

21   Life Strategies, were the terms, in terms of pay, was it

22   similar?  I mean the rate may have been different.  But were

23   the terms similar in terms of what you would get paid for?

24   **A**    Yes.

25   Q    And other than this letter, did anyone back in January of

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

26

1    2020 communicate to you how you -- how they would figure out

2    what you would be paid?

3    **A**    Yes.   $50 at a billable hourly rate.

4    Q    And so did that $50 for a billable hourly rate, did it

5    include all the tasks necessary to complete that billable hour?

6    **A**    I don't understand what you mean.

7    Q    Okay.  Well, let's go at it this way then.  And we'll just

8    start with someone.  Let's kind of get past the point that

9    you've established with that person.  What kind of therapy did

10   you do while you worked at Life Strategies?  Individual, group,

11   both?

12   **A**    Individual therapy, family therapy.  I don't recall ever

13   doing any groups at Life Strategies, but I could have.

14   Q    So what is the difference between individual therapy and

15   family therapy?

16   **A**    Family therapy usually includes members of the client's

17   family, so there would be two or more people in the room.

18   Q    And individual therapy was just one on one?

19   **A**    Yes.

20   Q    What populations, as far as adults, children, did you

21   provide therapy to?

22   **A**    Both children and adults.

23   Q    Did you provide any therapy in the schools?

24   **A**    Yes.

25   Q    Which school or schools?

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

27

1  **A**    Central Elementary, Southside Elementary, Cabot Freshman

2  Academy, Cabot Junior High North, Cabot Junior High South,

3  Cabot Middle South, Cabot Middle North, Eastside Elementary,

4  Stagecoach.   I believe that was it.

5  Q    All in the Cabot School District; correct?

6  **A**    Correct.

7  Q    Did you provide any therapy at the Life Strategies offices

8  in Cabot?

9  **A**    Yes.

10 Q    Did you provide therapy at any other office location of

11 Life Strategies?

12 **A**    No.

13 Q    Did you provide any therapy in the clients' homes?

14 **A**    On occasion, yes.

15 Q    And when you say on occasion, how frequently would that

16 be?

17 **A**    Maybe once a month or every other month.  It wasn't my

18 favorite thing to do, so I tried to avoid it.

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

31

15   Q    Okay, all right.  I thought that was the case, but I

16   didn't want to assume that.  And so for all these tasks that

17   you have mentioned, is the billable hour rate here in Exhibit 7

18   that's listed as $50 a billable hour, is -- it is -- if it was

19   an hour session, is $50 what you would receive for doing those

20   things, the scheduling, the check and compliance, the research,

21   the actual visit, and then the paperwork?

22   **A**    No.  The $50 was for the 53 to 60 minutes I spent face to

23   face with the client.

24   Q    Okay.  So were you paid for the other time that you've

25   referenced for the -- well, let me ask it this way.  Were you

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

32

1    paid for the schedule?

2    **A**    No.

3    Q    Were you paid for the time spent if you had to check

4    compliance?

5    **A**    No.

6    Q    Were you paid for the time that you had to conduct

7    research if you had to conduct that?

8    **A**    No.

9    Q    Okay, were you paid for the time you had to do paperwork

10   if you did it outside the 53 to 63 minutes?

11   **A**    No.

12   Q    And so what is it in this paperwork -- can you show me in

13   Exhibit 7 something that tells you that you were going to be

14   paid for the paperwork, the compliance, the scheduling, the

15   research?  Where does it say that in Exhibit 7?

16   **A**    It doesn't say it, but it doesn't talk about any of those

17   things either.

18   Q    Okay.  Who told you that you would be paid that in

19   addition to $50 per hour?

20   **A**    Nobody.

21   Q    When you worked for Life Strategies on a previous

22   occasion, were you paid for those items that we've talked about

23   outside of the therapy session?

24   **A**    No.

25   Q    Okay.  What is it that causes you then to believe that you

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

33

1   were to be paid for the time other than the time spent with the

2   client?

3   **A**   I don't know how to answer that.

4   Q   Okay.  Well, is there some piece of information that you

5   can think of that says your deal with Life Strategies

6   Counseling was not for $50 per billable hour that included all

7   of those tasks?  Is there something that you -- some piece or

8   item that you have that tells you that's not how -- that you

9   weren't paid $50 per billable hour?

10  **A**   No.

11  Q   Okay.  Is there something that tells you that you were

12  going to be paid something more than $50 per billable hour for

13  the other tasks that go with that hour that we just talked

14  about?

15  **A**    No.

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

47

14   Q    Did you receive a pay stub?

15   **A**    Electronic, yes.

16   Q    Were you the one that would go in and look at that, see

17   what it showed?

18   **A**    Yes.

19   Q    You all changed, I think, and had different systems at

20   different times; is that right?

21   **A**    Yes.

22   Q    But you were able -- did you have electronic access

23   through both systems?

24   **A**    Yes.  But it did not have -- it just gave the amount.  It

25   didn't say -- it didn't break it down.

Conway Court Reporting

95e5c600-67ff-4d34-a21a-e3d8d0d16a79

Stacy Wihebrink

48

1   Q   When you said it didn't break -- so you're saying it just

2   gave you, what, a gross pay amount, a net pay amount?

3   A   Yes.

4   Q   Do you have copies of any of that information?

5   A   No.

6   Q   But it didn't show you what your deductions were?

7   A   It showed all that.  It didn't show what I was being paid

8   for.

9   Q   So it didn't show whether you had -- how many billable

10  hours you had?

11  A   Correct.

12  Q   Did you keep up with how many billable hours you had in

13  the week?

14  A   Typically, yes, just looking at my calendar.

15  Q   What calendar would you look at?

16  A   My planner where I scheduled clients.

95e5c600-67ff-4d34-a21a-e3d8d0d16a79