IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STACY WIHEBRINK, Individually and on**
**Behalf of All Others Similarly Situated**                                    **PLAINTIFF**

**v.**                         **Case No. 4:21-cv-573-DPM**

**LIFE STRATEGIES COUNSELING, INC.**                              **DEFENDANTS**

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff and the Opt-Ins seek overtime under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"); and Arkansas Minimum Wage laws ("AMWA").  Through discovery not answered, they admit  they have not worked more than 40 hours in a week and did not work overtime.  Further Plaintiff persists in pursuing claims for Opt-Ins who last worked outside the statute of limitations and those whose billed hours are less than 20 on a weekly basis.  Alternatively, Plaintiff and the Opt-Ins  appear poised to attempt  to rewrite the contract of hire by speculating that billable hour rate is the regular rate.  No one was paid that way.  Established law calculates the regular rate on the compensation divided by the hours worked; Plaintiff and the Opt-Ins should be held to that standard.  Life Strategies Counseling, Inc. ("LSCI"), seeks summary judgment and, alternatively, partial summary judgment.

**II.  MATERIAL FACTS**

For purposes of this motion, the facts that follow are not in dispute and are intended to be considered in the light most favorable to Plaintiff and the Opt-Ins.

A.      **Overview of Services**

Life Strategies Counseling, Inc. ("LSCI") is a provider of mental health services with locations including Jonesboro, Paragould, Blytheville, Osceola, Marion, Trumann, Hot Springs and Little Rock/Cabot.  Plaintiff and the Opt Ins were hired as mental health professionals.

The services are provided from various offices, in client homes and in schools.  Ex. A.  Of the Opt Ins, some mental health professionals worked in the schools, and some do not.  Plaintiff worked out of the Cabot office, which allows onsite therapy.  Ex. D, p. 27[1].  She also worked in schools in Cabot.  Ex. D. p. 26.  Opt Ins worked at each located listed, but the numbers at a location vary.  Exs. E (Williamson, Little Rock/ North Little Rock), p.33; G (Bailey, Osceola/Blytheville), pp. 17, 20, 33; H (Buckley, Little Rock and Charter), p 27.

 LSCI provides different types of therapy, individual therapy, family therapy, and group therapy.  The milieu varied.  Exs. D (Wihebrink, No group), p. 26; F (Barnhill) p. 20; G (Bailey), p. 20; H (Buckley) pp. 27, 29-30, 33.  Not all mental health professionals perform all three types of therapy.

When a mental health professional is hired, they are offered specific, memorialized rate per billable hour.  Ex 1 to Ex. A.  A billable hour is a means of payment from payors, either Medicaid or private insurance.  LSCI must meet the requirements of the payor to be paid, which contain a variety of rules and documentation requirements.  Exs. D (Wihebrink), pp. 25-26, 31-33; E (Williamson), pp. 34, 36; F (Barnhill) pp. 16, 19-20. 30-33; G (Bailey), pp. 16, 30-31; H (Buckley) pp. 33-34.  LSCI provides the administrative and compliance support, and also has some contracts

[1]The deponents are still within their signature period.  Should an errata modify any such material testimony in a permissible way, it will be addressed.

with entities in need of services and payors.  Ex. A.  .Mental health professionals are paid based on the completion of all tasks necessary to bill and be paid by the payor.  Ex. A.  Likewise, as is common practice in mental health, an hour may not be a clock hour.

Group therapy is paid at a set rate per unit per person.  Like individual therapy, there are rules and documentation requirements.  A group must consist of at least two people, but no more than ten. Individual records must be completed for group therapy.  Ex. A.

LSCI provides orientation training for new mental health professionals before they see any clients.  Orientation addresses not only how one must bill to be paid, but also discusses the types of the therapy and the means of payment.  Ex. A. No employee testified to a discussion of the billable hour rate, or any other rate, as the regular rate.  Ex. F (Barnhill), p. 35.

LSCI also conducted training or staffing intermittently during employment.  These items carry a variety of names.  Such training consisted of  of mental health professionals, which are not billable hours.   LSCI paid one half of the billable hour rate for training. Ex. A.

LSCI maintained payroll records setting out billable hours for individual therapy, family therapy and group therapy.  Ex. A.  Payroll information was available electronically.  Ex. D (Wihebrink), pp.47-48; E (Williamson) p. 32;F (Barnhill) p. 43; G (Bailey), pp. 37-40; H (Buckley) pp. 46-47.  Records have been produced in discovery by LSCI subdivided by the type of  billable services and also included the amount of training hours.  Exs. A, B.  Employees also had access to other records that detailed what billable hours had been accepted.

### B.    The Suit and Summary Judgment Defenses.

 On June 25, 2021, Plaintiff Wihebrink filed suit.  Ms. Wihebrink did not file a consent to join. Doc. 1.  On April 26, 2022, the Court conditionally certified a collective of individuals who

had performed work for Life Strategies Counseling, Inc., as mental health therapists.  Doc 14.  This included persons who were part-time or PRN (as needed).

During the notice period, 22 persons opted in.  A few others have been added by agreement with late-filed consents.  Some opted in more than three years after last working at LSCI.  Some who opted in never billed a single hour.  Others who opted in billed no more than twenty hours in a workweek.  It is believed that some, if not all of those persons will concede dismissal, but as of this filling, they are part of the case.  Eliminating those Opt-Ins decreases the total by nine people.

Life Strategies Counseling, Inc. sent Requests for Admissions to Plaintiff and all  Opt-Ins on November 29, 2022.   Ex. B.   No Plaintiff and no Opt-In responded to the Requests for Admissions.  The discovery deadline passed on March 15, 2023. Docs. 8, 36.

Plaintiff and some Opt-Ins recently were deposed at agreed-upon dates.  Others failed to appear for their scheduled depositions. Ex. C.

## III.  LEGAL ANALYSIS

### A.      Plaintiff and the Opt-Ins Admit No Overtime.

Plaintiff and the Opt-Ins did not respond to Requests for Admissions served November 30, 2022, admitting the following:

1.      During their employment, they worked on a part-time basis;

2.      They did not work more than 40 hours in any single workweek; and

3.      They did not work any overtime.

Ex. B.  The parties worked cooperatively in discovery, but the deadline has passed.  The admission is automatic.  Fed. R. Civ. Proc. 36(a)(3); *see Secretary, U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3rd Cir. 2017).  Covering the matter in a deposition is not a substitute.  *See U.S. v. Kasuboski*,

834 F.2d 1345, 1349 (7th Cir. 1987).  An admission has conclusive effect.  *See Stine Seed Co. v. A&W Agribusiness, LLC*, 862 F.3d 1094, 1102 (8th Cir. 2017).

Upon admission that Plaintiff and the Opt-Ins did not work more than 40 hours in a week and did not work overtime, LSCI requests summary judgment.  Summary judgment is appropriate for an employer in such case.  *See, Reimer v. Champion Healthcare Corp.*, 250 F.3d 720, 724 (8th Cir. 2001); see also *Rapp v. Network of Cmty. Options, Inc.*, 3 F.4th 1084, 1088 (8th Cir. 2021) (affirming the grant of summary judgment to defendants in an FLSA case when the plaintiff failed to "specifically account for the hours worked").  The same reasoning applies under the Arkansas Minimum Wage Act.  *Helmert v. Butterball, LLC*,  4:08CV00342 JLH,, 2009 WL 5066759 (E.D. Ark. Dec. 15, 2009).

### B. Part-Time Opt-Ins Who Billed in the Single Digits and Teens Do Not Claim Over 40 Hours Worked.

Opt -Ins Aution, Burks, Butler, Counts, Dickerson, Evans, Haliburton, O'Guinn and Pickrom concede that they did not work more than 40 hours in any week.  Ex. A, ¶12.  However, dismissal has not been requested for nine Opt Ins.

Ms. Aution billed in the single digits and the teens over about six months.  Ex. A, ¶12. Mr. Burks did not bill more than 19 hours in any single workweek.  Ex. A, ¶12. Casey Butler was only paid for training in July of 2018. Ex. A, ¶10.  Ms. Counts never billed more than the single digits in any workweek.  Ex. A, ¶12. Ms. Dickerson billed in the teens and single digits for her workweeks. Ex. A, ¶12.  Mr. Evans, who had his own private practice,  billed no more than 1.5 hours after June 25, 2018 and last billed in July of 2018.Ex. A, ¶¶ 12, 13.   Ms. Halliburton completed her training and billed 1.5 hours.  Ex. A, ¶9. Ms. Liddell completed her training and never billed more than 10

hours in a workweek.  Ex. A, ¶12. Ms. O'Guinn worked approximately three months and billed no more than 18 hours in any single week. Ex. A, ¶12.  Ms. Pickrom only was paid a flat rate for her training. Ex. A, ¶10.  LSCI requests summary judgment on the overtime claims.

**C.**    **The statute of limitations bars claims of Opt-Ins who last worked in 2018.**

Plaintiff filed suit on June 25, 2021.  Four Opt-Ins filed outside even a three-year statute of limitations:

|  |  | Date of Consent to Joint | Last Workweek |
|---|---|---|---|
| • | Michael L. Evans | May 6, 2022 (Doc.  15) | July 19, 2018 |
| • | Kenya Liddell: | May 9, 2022 (Doc. 16) | September 9, 2018 |
| • | Tequlia Pickrom | May 25, 2022 (Doc. 21) | December 6, 2018 |
| • | Casey Butler | July 18, 2022 (Doc. 29) | July 19, 2018 |

Ex. A, ¶13. These claims are time-barred under the statute of limitations under the FLSA[2] and the two-year  Arkansas Minimum Wage Act statute of limitations. *Redman v. U.S. West Business Resources, Inc.*, 153 F.3d 691, 695 (8th Cir. 1998); Ark. Code Ann. §11-4-218(g) (two year statue of limitations).

**D.**    **The Regular Rate is Calculated by Dividing the Total Pay by the Estimated Hours Worked.**

Contrary to the assertions of Plaintiff and the Opt-Ins, the "billable hour" includes  payment for all tasks involved and is not the regular rate.[3]

---

[2]Whether a two-year or three-year statute of limitations applies is not germane to the dismissal of these Opt Ins.

[3]This difference would increase the claims in some instances by a factor of 10 in Defendant's estimation.  Further, the rate of pay for therapists would also exceed the amount of reimbursement by the payor in many, if not all, instances.

The 'regular rate' ... is a rate per hour.  The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to the employee must be computed on the basis of the hourly rate derived therefrom, and therefore, it is necessary to compute the regular hour rate of such employees during each workweek....

29 C.F.R. § 778.109.  LSCI does not seek a precise calculation at this time, but does seek to narrow the issues by summary judgment on the method of calculation of the regular rate to that set in the statute.  This is not an unusual request.  Recently, the Eighth Circuit reaffirmed the calculation of the regular rate:

> An employee's regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Youngerman-Reynolds*, 325 U.S. at 424, 65 S.Ct. 1242 (emphasis added); *see also id.* (noting the regular rate is "not an arbitrary label chosen by the parties; it is an actual fact"). To test the validity of a wage agreement under the FLSA, we "look beyond that which the parties have purported to do" and determine how employees are actually paid. *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947); *see also Youngerman-Reynolds*, 325 U.S. at 424–25, 65 S.Ct. 1242 ("Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts.").

*Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 863 (8th Cir. 2021).

Plaintiff and the Opt Ins all agreed to be paid an amount per billable hour.  Ex. A.  Plaintiff and the Opt Ins were paid by the billable hour, or for group therapy, the billable unit. Ex. A.   LSCI defines a billable hour as "actually eligible to be billed and reimbursed under Medicaid or Insurance programs...."  Ex. A, LSCI 721.  Units or hours not billable for therapy  are not subject to be paid. Ex. A, LSCI 721.  The regulation permits payment on a 'task' rate "without regard to the number of hours consumed in completing the task." 29 C.F.R. § 778.312.  A regular rate may also be calculated on a piece rate.  Such rates may be implicated, or even found to be a fee,  in the performance of professional services such as therapy.  *Fazekas v. Cleveland Clinic Found. Health*

*Care Ventures, Inc.*, 204 F.3d 675-79 (6th Cir. 2000) (noting fee basis of payment in applying exemption).

The pay basis documented a set amount per billable hour for group therapy and an amount per unit per person for group therapy. This task basis (or piece basis) method is explained by Judge Miller in *Wallace v. Kids for the Future, Inc.*, 2:22-CV-00105-BSM, 2023 WL 22609, at *2 (E.D. Ark. Jan. 3, 2023). There, Judge Miller concluded that the pay for billable units for a qualified behavioral health professional was based on the regular rate calculation reflected in the regulations. Judge Miller rejected the bald assertions that the unit rate was an hourly rate. *Id.* Ms. Wallace tried the same thing Ms. Wihebrink and the Opt-Ins may try[4] now. Such allegations cannot overcome the reliable evidence presented. *Id.* (citing *Aunforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010)).

Nowhere is there an argument that the billable hour payment is the regular rate. Employees were not paid $42-$55 as a regular rate. Employees pointed to no other contract or agreement that established those amounts as the regular rate. Ex. D (Wihebrink), pp. 25-26, 31-33; E (Williamson), pp. 34, 36; F (Barnhill) pp. 16, 19-20. 30-33; G (Bailey), pp. 16, 30-31; H (Buckley) pp. 33-34. It is undisputed that the billable rate was not the regular rate. All Plaintiff and the Opt Ins can do is speculate that the agreement was different than what was stated and paid.

The wage rate in the contract of hire is established by what was provided in the letters, the training and what was paid.

> [I]t is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203

---

[4]Plaintiff provided scant, if any, detail to suggest such a claim. However, in depositions, Plaintiff and some Opt Ins speculated that the billable hour rate was the regular rate.

> S.W.3d 77, 80 (2005). Both parties must manifest assent to the particular terms of the contract. Id. Furthermore, "[f]or a party to assent to a contract, the terms of the contract must be effectively communicated." Id. at 577, 203 S.W.3d at 80 (citing *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991)). No evidence has been presented that the parties agreed that employees could be paid for time spent donning and doffing. The plaintiffs have testified in deposition that the topic was never discussed. Therefore, the plaintiffs can present no evidence that they and Butterball agreed that Butterball would compensate them for time spent donning and doffing.

*Helmert v. Butterball, LLC*, 2009 WL 5066759, at *16 .  The Court rejected a contract claim for payment for all hours worked.  Plaintiff and the Opt Ins have not established a meeting of the minds. That the billable rate was the regular rate.  Indeed, no contract claim is made  They cannot change the terms of employment after the fact to suit their calculation goals.

## III.  CONCLUSION

LSCI requests summary judgment, or partial summary judgment,  for the reasons stated herein.

Respectfully submitted,

Mark Mayfield (93180)
WOMACK PHELPS
PURYEAR MAYFIELD & McNEIL, P.A.
P.O. Box 3077
Jonesboro, AR 72403
Phone:  (870) 932-0900
Facsimile:  (870) 932-2553

By: /s/ Mark Mayfield _____
    *Attorneys for Defendant,*
    *Life Strategies Counseling, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. Daniel Ford
Mr. Josh Sanford
SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford, Suite 411
Little Rock, Arkansas 72211
merideth@sanfordlawfirm.com
josh@sanfordlawfirm.com

/s/ Mark Mayfield
Mark Mayfield

-10-