IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STACY WIHEBRINK, Individually and on**     **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                     No. 4:21-cv-573-DPM

**LIFE STRATEGIES COUNSELING, INC.**           **DEFENDANT**

## RESPONSE TO MOTION TO DECERTIFY

### I.    INTRODUCTION

This Court should deny the Motion to Decertify (ECF No. 41) filed by Defendant Life Strategies Counseling, Inc., and instead grant final certification of the class of opt-in Plaintiffs and Opt-In Plaintiffs (hereinafter collectively referred to as "Plaintiffs"). The evidence in this case demonstrates that Plaintiffs are similarly situated such that this case should proceed to trial as a collective action. In arguing to the contrary, Defendant relies on minor and inconsequential differences to create the illusion of variation among Plaintiffs. However, not only does the evidence presented in this case demonstrate that Plaintiffs are similar in all of the ways that matter to the issues to be tried, but they are fundamentally similar even with respect to the irrelevant differences relied on by Defendant. This case presents the exact scenario envisioned by the collective action procedures of the FLSA: a group of similarly situated laborers coming together to have their claims heard with efficiency and expediency. Defendant's request for decertification should be denied.

Page 1 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
**U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM**
**Response to Motion to Decertify**

## II.     STATEMENT OF RELEVANT FACTS

Defendant is a provider of mental health services to clients. *See* Defendant's Statement of Undisputed Material Facts (SUMF) ¶ 1 (ECF No. 40). To provide the services it offers to its clients, Defendant hires mental health professionals such as Plaintiffs. *Id*. at ¶ 3. Plaintiffs all held the job of mental health professional, and Defendant provided standard training for Plaintiffs to perform this job. *Id*. at ¶ 5.

Mental health professionals such as Plaintiffs provide services to Defendant's clients in offices, in client homes and in schools. *Id*. The types of therapy include individual, family, and group therapy, and Plaintiffs provided one or more of these types of therapy. *Id*. at ¶ 2; Exhibit 1, Deposition of Stacy Wihebrink (hereinafter "Depo. Wihebrink"), March 21, 2023, 26:7–13 (providing individual and family therapy for Defendant); Exhibit 2, Deposition of Paul Bailey (hereinafter "Depo. Bailey"), March 22, 2023, 20:11–12 (providing individual, family and group therapy for Defendant); Exhibit 3, Deposition of Shelby Barnhill (hereinafter "Depo. Barnhill"), March 21, 2023, 20:19–22 (providing individual, family and group therapy for Defendant); Exhibit 4, Deposition of Cherie Buckley (hereinafter "Depo. Buckley"), March 24, 2023, 32:21–24 providing individual, family and group therapy for Defendant); Exhibit 5, Deposition of Jenifer Williamson (hereinafter "Depo. Williamson"), March 21, 2023, 21:11–15 (providing individual, family and group therapy for Defendant).

Plaintiffs provided therapy to children and adults, with therapy for children often being in the school setting during days in the school year and in client homes and Defendant's offices during evenings and summertime. Depo. Wihebrink, 26:23–27:18 (providing therapy at various schools, in Defendant's offices and occasionally in client

Page 2 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

homes); Depo. Bailey, 20:13–17 (identifying several schools where he worked), 21:11–18 (occasionally providing therapy in client homes or Defendant's offices); Depo. Barnhill, 20:23–21:9 (providing school-based therapy in 8 to 10 schools in Little Rock school district and Maumelle), 22:8–10 (providing family therapy outside of the school); Depo. Buckley 27:5–24 (providing therapy in several different schools), 30:14–21 (most after-school sessions were in the home); Depo. Williamson, 21:16–21 (providing therapy in four to five different schools); 22:12–21 (providing therapy in client homes).

Plaintiffs had a level of control over their own schedules because they were responsible for scheduling their own appointments with clients. Depo. Wihebrink, 28:13–16; Depo. Bailey, 32:24–33:1; Depo. Barnhill, 28:13–15; Depo. Buckley, 26:9–21; Depo. Williamson, 22:12–21. Plaintiffs made efforts to schedule client sessions within a single school or area around the same time of day to avoid wasting time driving across town numerous times. Depo. Wihebrink, 41:1–20; Depo. Bailey, 22:4–11, 27:4–13; Depo. Barnhill, 21:17–22:4, 28:16–19; Depo. Buckley, 28:10–23, 42:8–16. However, because Plaintiffs' schedules were subject to availability of clients, this was not always possible. Depo. Wihebrink, 41:14–20; Depo. Bailey, 21:25–22:3; Depo. Barnhill, 21:17–22:4; Depo. Buckley, 42:4–7, 43:19–25.

In addition to the actual therapy sessions Plaintiffs provided, Plaintiffs were also required to perform other therapy-related tasks. For example, Plaintiffs had to complete "notes," which are essentially a written note on what the sessions were about during that day, like a progress note. Depo. Wihebrink, 30:15–21; Depo. Bailey, 22:22–23:3; Depo. Barnhill, 37:14–23; Depo. Buckley, 25:18–26:5, 31:11–17; Depo. Williamson, 24:18–25:1. Plaintiffs also had to prepare treatment plans as well as updates to treatment plans or

Page 3 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

treatment plan reviews. Depo. Wihebrink, 29:2–12, 30:15–21, 35:23–36:5, 36:12–14; Depo. Bailey, 26:4–11, 35:9–11; Depo. Barnhill, 20:19–22; Depo. Buckley, 31:11–17; Depo. Williamson, 25:2–6, 37:8–15. Treatment plans provide an outline to the clients and their parents with respect to goals and objectives of the sessions, as well as frequency of visits, and are occasionally updated. Depo. Wihebrink; Depo. Bailey, 33:13–33:21, 34:14–17; Depo. Barnhill, 24:15–19; Depo. Buckley, 37:8–15; Depo. Williamson, 37:8–15. In addition, Plaintiffs did intake paperwork on clients, which is paperwork that is completed for new clients. Depo. Wihebrink, 36:23–37:5; Depo. Bailey, 24:17–24; Depo. Barnhill, 20:19–22, 25:8–21; Depo. Buckley, 37:16–23.

Plaintiffs were required to complete notes for each therapy session through Defendant's online system, and Plaintiffs typically completed their session notes and other paperwork at home in the evenings and on weekends (although Plaintiff Barnhill sometimes started her notes during client sessions if the client was working on something independently and Plaintiff Williamson sometimes worked on notes during lunch). Depo. Wihebrink, 39:16–21, 44:4–8; Depo. Bailey, 34:19–35:2; Depo. Barnhill, 47:13–21, 50:11–25; Depo. Buckley, 31:11–32:2; Depo. Williamson, 23:18–20, 24:10–17. Individual and family session notes took on anywhere from ten to thirty minutes per note, with most Plaintiffs who sat for depositions estimating in the ten-minute range. Depo. Wihebrink, 43:20–24 (estimating ten minutes per note); Depo. Bailey, 23:3–7 (estimating ten minutes per note), 45:12–18; Depo. Barnhill, 51:1–14 (estimating five to ten minutes per note); Depo. Buckley, 35:1–5 (estimating eight minutes per note); Depo. Williamson, 24:18–25:1 (estimating twenty to thirty minutes for a progress note). However, group therapy notes were different and took more time per session because a note had to be completed for

Page 4 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

each group session participant, which could range between two and ten participants. *See* Depo. Bailey, 23:8–23; Depo. Barnhill, 22:16–25; Depo. Buckley, 35:6–8; Depo. Williamson, 35:19–21; *But see* Depo. Wihebrink, 26:7–13 (does not recall doing group therapy for Defendant).

Defendant contends that it universally paid its mental health professionals, including Plaintiffs, according to a "billable hour" system, although Plaintiffs disagree as to what the "billable hour" covered. SUMF at ¶ 7; Depo. Wihebrink, 25:25–26:3, 31:16–23; Depo. Bailey, 16:14–21; Depo. Barnhill, 19:14–20:9; Depo. Buckley; Depo. Williamson, 26:8–15, 28:20–29:1. It is undisputed that Plaintiffs were not separately compensated outside of the "billable hour" pay for time spent working on notes outside of therapy sessions. *Id*. at ¶ 7.

### III. APPLICABLE LEGAL STANDARDS

Section 216(b) of the FLSA states as follows: "An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *See* 29 U.S.C. § 216(b). One primary purpose of a collective action is to allow for the resolution of common issues of law and fact arising from the same alleged activity in one proceeding, as opposed to numerous proceedings. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Another purpose is to lower the cost of vindicating congressionally identified rights by pooling of resources. *Id*.

Courts typically utilize a two-tiered approach to certification of collective actions as set out in *Mooney v. Aramco Services Co. See* Mem. Op. and Order at 5–7, ECF No. 34; *McQuay v. Am. Int'l Group*, No. 4:01-cv-661-WRW, 2002 U.S. Dist. LEXIS 21307, at *5

Page 5 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

(E.D. Ark. Oct. 28, 2002) (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995)).

This two-tiered approach envisions an initial "conditional certification" for notice purposes early on in a case (the "notice stage") and then a second stage to evaluate the propriety of certification (the "final certification stage"). *Salter v. Onyx Corp.*, No. 4:10-cv-906 JLH, 2011 U.S. Dist. LEXIS 23291, at *2 (E.D. Ark. Feb. 24, 2011); *see also Zavala v. Walmart Stores, Inc.*, 691 F.3d 527, 537 (3d Cir. 2012).

At the final certification stage, the court decides whether members of the proposed collective are similarly situated. *Zavala*, 691 F.3d at 537; *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). Plaintiffs may meet their burden at the final certification stage by either proving that the employer "engaged in a unified policy, plan, or scheme of FLSA violations," or that "their positions are 'similar, not identical' to the positions held by the other class members." *Douglas*, 888 F. Supp. 2d at 933.

The similarly situated standard is less demanding than the Rule 23 standard, and collective action members need only be "similarly situated," not identical. *See O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 580 (6th Cir. 2009); *Scovil v. FedEx Ground Package Sys.*, 886 F. Supp. 2d 45, 57 (D. Me. 2012); *Thompson v. Bruister & Assocs.*, 967 F. Supp. 2d 1204, 1220 (M.D. Tenn. 2013) (citing cases); *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007). That some factual variation exists among collective members does not warrant decertification, so long as the collective members are similarly situated with respect to the relevant factual circumstances. *See Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-cv-2855-T-24 MAP, 2013 U.S. Dist. LEXIS 150854, at *45 (M.D. Fla. Oct. 21, 2013); *Kelly v. Healthcare Servs. Grp., Inc.*, 106 F. Supp. 3d 808, 816 (E.D.

Page 6 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
**U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM**
**Response to Motion to Decertify**

Tex. 2015) ("most courts acknowledge that there will be 'numerous differences' and 'legitimate differences' in the plaintiffs' testimony. The question for the court is whether these differences are so material as to prevent Plaintiffs from being similarly situated to one another") (internal citations and editing marks omitted); *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014) ("the Court concludes [defendant] has adeptly identified numerous differences between individual plaintiffs, but none so material as to prevent them from being similarly situated to one another"); *Thompson*, 967 F. Supp. 2d at 1220 ("Rare would be the collective action - or class action for that matter - where the employees labored under the exact same circumstances.").

As many courts have aptly noted, "[i]f one zooms in close enough on anything, differences will abound . . . but those distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (citing *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018 (PJS/RLE), 2007 U.S. Dist. LEXIS 71179, at **11–12 (D. Minn. Sep. 24, 2007)); *see also, e.g.*, *Thompson*, 967 F. Supp. 2d at 1220 (same). Where differences exist, the Court should ask whether those differences "outweigh the similarities of the practices to which they were allegedly subjected." *Douglas*, 888 F. Supp. 2d at 933. To assist with the final certification stage analysis, courts generally consider the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Id.*; *See also Brackett v. St. Louis Bd. of Police Comm'rs*, No. 4:12-CV-898-JAR, 2014 U.S. Dist. LEXIS 48034, at *7 (E.D. Mo. Apr. 8, 2014).

Page 7 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify**

## III.    ARGUMENT

The evidence in this case demonstrates that Plaintiffs held the same job title for Defendant, performed similar tasks—including providing mental healthcare sessions to Defendant's clients and completing all of the associated paperwork and schedule related to those sessions—and were paid in a similar fashion. The "differences" Defendant relies on to support its request for decertification are either irrelevant to the issues being litigated in this case or are easily managed. Therefore decertification is inappropriate and Plaintiffs should be allowed to proceed collectively as intended under the FLSA, 29 U.S.C. § 216(b).

**A.    The Size of the Collective Does Not Justify Decertification.**

Defendant argues that factual differences, varying defenses and the size of the collective all justify decertification. Factual differences and varying defenses are specifically identified as factors for consideration at the decertification stage, and the failure of these factors to support decertification is thoroughly discussed below. However, the issue of collective size is simply not a basis for decertification.

Critically, Defendant has failed to cite any authority in support of its claim that a small collective size suggests collective treatment is improper. Indeed, case law indicates otherwise—that collective size is irrelevant to collective treatment. *See Carden v. Scholastic Book Clubs, Inc.*, 2011 U.S. Dist. LEXIS 73590, at *3 (W.D. Mo. July 8, 2011) ("[S]tandards governing class claims under Rule 23, including those related to numerosity, do not apply to collective action claims under the FLSA."). Moreover, the goals and purposes of a collective action are still met even in a small collective. These goals and purposes include reducing the burden on plaintiffs through the pooling of resources, and efficiently resolving common issues of law and fact that arise from the

Page 8 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
**Response to Motion to Decertify**

same illegal conduct. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989); *Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-cv-2855-T-24 MAP, 2013 U.S. Dist. LEXIS 150854, at **48–49 (M.D. Fla. Oct. 21, 2013). Accordingly, Defendant's request for decertification on this basis should be denied.

**B.    The Factors Relevant to Decertification Weigh in Plaintiffs' Favor.**

Plaintiffs have established that they are similarly situated for purposes of proceeding collectively under the FLSA. As set forth below, each factor considered by Courts in determining whether to allow a case to proceed collectively also weighs in favor of continued collective certification in this case. Therefore, Defendant's request for decertification must be denied.

    1.  <u>The Disparate Factual and Employment Settings of Plaintiffs</u>

The first factor analyzed at the decertification stage—disparate factual and employment settings of plaintiffs—weighs in favor of continued certification. As set forth above, the factual and employment settings of Plaintiffs are highly similar, with each performing similar work under in a similar manner and subject to the same pay provisions and policies. These similarities relate to the very issues on which the FLSA and AMWA violations alleged by Plaintiffs rest—whether Plaintiffs performed work for which they were not properly compensated. Any factual differences identified by Defendant are irrelevant and therefore do not warrant decertification.

As set forth above, Plaintiffs do not have to be "identically" situated in order to proceed collectively, which inherently means that some differences are permissible. *Douglas*, 888 F. Supp. 2d at 933; *O'Brien*, 575 F.3d at 580; *Nerland*, 564 F. Supp. 2d at 1018. In this case, Plaintiffs all labored under the same job title for Defendant—"mental


Page 9 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
**U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM**
**Response to Motion to Decertify**

health professional." SUMF at ¶ 3. Plaintiffs performed similar tasks in a similar manner. Particularly, Plaintiffs provided therapy sessions to Defendant's clients, commonly in a school setting. *See* Statement of Relevant Facts, *supra*. The tasks related to this work were similar, with Plaintiffs scheduling their own appointments, developing treatment plans, providing therapy sessions, traveling between various facilities and locations to provide therapy, and taking session notes via online system. *Id.* In order to be paid for this work, Plaintiffs had to perform work outside of the therapy session, including complying with billing requirements of the payor, primarily the standard requirements of the Medicaid program. Depo. Wihebrink, 29:2–15, 31:1–23 (in order to bill a therapy session, she had to do client scheduling, compliance check, research and paperwork, which included Medicaid and Optum paperwork requirements); Depo. Bailey, 34:19–35:11 (describing tasks necessary to bill for a session), 43:18–23 (estimating that 80% of clients were Mediciaid); Depo. Barnhill, 20:4–12 (discussing additional tasks beyond the therapy session necessary to make therapy time billable, including necessary documentation); Depo. Buckley, 46:2–13 (all of her clients were on Medicaid and she had to comply with Medicaid rules, including proper paperwork requirements); Depo. Williamson, 25:25–26:7, 45:3–15 (work had to comply with Medicaid rules in working with Medicaid patients, including that patient times could not overlap and the chart had to be in compliance with Medicaid requirements). Failure to meet requirements could result in Plaintiffs not being paid for their work. Depo. Wihebrink, 29:2–15; Depo. Bailey, 34:19–24; Depo. Barnhill, 29:11–30:10; Depo. Buckley, 46:2–13; Depo. Williamson, 39:10–14, 46:4–10.

Page 10 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
**U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM**
**Response to Motion to Decertify**

In other words, Defendant's billable-hour system meant that Plaintiffs were paid only if they met all of the requirements for billing a patient's insurer, which required task completion and paperwork outside of the actual therapy sessions. It is this standard system of payment that underlies Plaintiffs' claims in this case. Particularly, Plaintiffs performed substantial amounts of work beyond the therapy sessions they held, including scheduling, traveling, and note recording. Yet, Defendant's "billable hour" pay structure did not account for overtime wages for work performed in excess of forty per week. Therein lies the uniform overtime wage violation alleged by Plaintiffs.

Although not meaningfully described by Defendant, the factual differences Defendant alleges do not support decertification because they fundamentally do not relate to the relevant factual circumstances or the issues to be presented at trial in this case. As set forth above, factual variation among collective members does not warrant decertification so long as the collective members are similarly situated with respect to the relevant factual circumstances. *See Bobbitt*, 2013 U.S. Dist. LEXIS 150854, at *45; *Kelly*, 106 F. Supp. 3d at 816; *Clark*, 44 F. Supp. 3d at 688; *Thompson*, 967 F. Supp. 2d at 1220. Plaintiffs have shown how their substantial similarities relate to the issues of liability in this case. The differences claimed by Defendant do not meet this standard.

For example, Defendant argues that Plaintiffs worked in different geographic areas, and that there are only a few Plaintiffs within each geographic area. However, Defendant has not shown that this difference is relevant in any way, and Plaintiffs can see no such relevance. Defendant argues that school-based mental health services vary by location, but fails to offer any facts to support this claim or to identify ways in which such non-specified variances might affect the issues of liability in this case. On the other

Page 11 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
**Response to Motion to Decertify**

hand, Plaintiffs have shown that, regardless of where they worked or the types of mental health services they provided, they performed similar tasks and were subject to the same pay policies that lead to the violations alleged in this case in the same way.

Similarly, Defendant argues that Plaintiffs' workday starting times varied, but again has failed to show how those differences are relevant to the issue of liability. Plaintiffs were able to estimate their workday start and end times as well as the average number of hours they spent doing evening and weekend notes each week. Depo. Wihebrink; Depo. Bailey, 20:18–21:21, 26:19–25, 26:15–18; Depo. Barnhill, 35:25–37:11, 37:24–22; Depo. Buckley, 28:14–30:7, 32:16–20; Depo. Williamson, 22:12–23:6, 22:12–25. As set forth above, Plaintiffs also estimated the amount of time devoted to the individual notes at issue, and these estimates underlie Plaintiffs more broad estimates of weekly hours worked. Nothing suggests that Plaintiffs must all have the same start and end times to proceed collectively, but the information they provided may be used to support their estimates of the hours they worked each week. At best, this ties into Defendant's argument regarding the variable number of hours worked by Plaintiffs.

Specifically Defendant argues that Plaintiffs worked varying hours and that some worked fewer than forty hours per week. However, numerous courts have held that "individual differences in number of hours worked will not warrant decertification as long as plaintiffs show they are subject to a 'single decision, policy, or plan.'" *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 368 (S.D.N.Y. 2014) (internal editing marks omitted); *Lassen v. Hoyt Livery, Inc.*, No. 13-cv-1529 (VAB), 2016 U.S. Dist. LEXIS 169506, at *37 (D. Conn. Dec. 8, 2016) (same). *See also Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 368 (D. Md. 2015) ("While there may be differences in hours

Page 12 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

worked, those differences are inevitable and do not preclude a finding of a similarly situated collective action."); *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 312 (D. Md. 2014) ("While actual hours worked and wages due may vary within the collective, district courts in the Fourth Circuit have clarified that [d]ifferences as to time actually worked, wages actually due and hours involved do not preclude a finding of a 'similarly situated' class"); *Romero v. Fla. Power & Light Co.*, No. 6:09-cv-1401-Orl-36-GJK, 2012 U.S. Dist. LEXIS 197650, at *8 (M.D. Fla. Feb. 22, 2012) ("With respect to disparate amounts of owed overtime and differing periods of employment with FPL, the Court agrees with Plaintiffs that the need for individual plaintiffs to establish the amount of their uncompensated time does not defeat collective action certification."); *Gilmer v. Alameda-Contra Costa Transit Dist.*, No. C 08-05186 CW, 2011 U.S. Dist. LEXIS 126845, at *16 (N.D. Cal. Nov. 2, 2011) ("Variations in damages awards do not justify decertification of this collective action.").

Those district court holdings are consistent with the Eighth Circuit's conclusion in *Bouaphakeo v. Tyson Foods, Inc.*, that "[i]ndividual damage calculations…are permissible if they do not 'overwhelm questions common to the class.'" 765 F.3d 791, 798 n. 5 (8th Cir. 2014) (*aff'd*., 136 S. Ct. 1036 (U.S. March 22, 2016)). In *Bouaphakeo*, the Eighth Circuit discussed at length FLSA collective certification standards in factory settings. The suit involved a class of chicken plant employees who were paid on a "gang time" system, meaning that they were only paid for time when they were at their working stations and the production line was moving. *Id.* at 794. Tyson argued that the case could not be tried on a collective basis for two reasons: because the activities the employees did before and after they were on the line varied from employee to employee, and

Page 13 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
**U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM**
**Response to Motion to Decertify**

because some class members worked so few hours as to have no damages at all. *Id.* at 797. The Eighth Circuit rejected those arguments, finding that the salient point was that "Tyson had a specific company policy . . . that applied to all class members." *Id*.

The same is true here. Defendant had a standard pay policy that applied to all Plaintiffs and which fundamentally impacted Plaintiffs in the same way. The factual "differences" identified by Defendant are largely irrelevant and insufficient to overcome the substantial relevant similarities identified by Plaintiffs.

   2. <u>Individual Defenses Available to Defendant</u>

This second factor in the decertification analysis is related to the first factor in that the Court must evaluate whether disparate facts support individualized defenses. *Kelly v. Healthcare Servs. Grp., Inc.*, 106 F. Supp. 3d 808, 827 (E.D. Tex. 2015). Courts examining this factor "are concerned with whether representative evidence can be used to make class-wide determinations and the extent to which resolution requires such individualized inquiries that the case cannot proceed collectively." *Clay*, 2019 U.S. Dist. LEXIS 34306, at *41–42. "In other words, if 'many different defenses will be raised with respect to each individual defendant,' decertification may be proper." *Id*. at 42 (citing *Reyes v. Texas Ezpawn, L.P.*, No. V-03-128, 2007 U.S. Dist. LEXIS 1461, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007). The presentation of individualized defenses for each plaintiff should not be allowed to "frustrate the efficiency of a collective action." *Id*. A defendant's "right to defend against individualized claims on an individual basis, rather than collectively…must be balanced with the rights of the plaintiffs—many of whom would likely be unable to bear the costs of an individual trial—to have their day in court." *Johnson*, 4 F. Supp. 3d at 460.

Page 14 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify**

This factor weighs in favor of continued certification for several reasons. First, the defenses identified by Defendant are easily managed by subclassification. Second, the defenses largely revolve around damages and not liability. Defendant has raised no defenses which are necessarily particular to the unique factual circumstances of individual Plaintiffs. Accordingly, continued certification is appropriate.

More specifically, Defendant argues that the number of hours worked by some Plaintiffs is so low that they did not have overtime hours worked. While Plaintiffs maintain that this is an issue of fact to be resolved at trial, for purposes of the current Response the relevant issue is that it is possible to group these Plaintiffs in order to efficiently manage collective treatment and litigate those claims collectively. The same is true for Defendant's argument that some Plaintiffs filed their Consents to Join outside of the applicable limitations period. Although the facts must still be litigated, these Plaintiffs are easily identified for subgrouping and in fact Defendant has already done so. *See* Brief in Support of Defendant's Motion for Summary Judgment (ECF No. 39). To be sure, Plaintiffs disagree that the "differences" identified by Defendant defeat the similarly situated status of the collective. The Plaintiffs within the groups identified by Defendant necessarily still performed the same type of therapy work with the same type of paperwork requirements, including treatment plans and note-taking, with the same type of billable-hour pay structure. However, the defenses claimed by Defendant—including alleged lack of overtime and statute of limitations—may be handily addressed by subclassification.

Courts recognize the value of subclassification and other case management tools to address differences among collective members. *See Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014) ("the Court concludes [defendant] has adeptly

Page 15 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

identified numerous differences between individual plaintiffs, but none so material as to prevent them from being similarly situated to one another"); *Collinge v. Intelliquick Delivery, Inc.*, No. 2:12-cv-00824 JWS, 2015 U.S. Dist. LEXIS 35858, at *34 (D. Ariz. Mar. 23, 2015) ("Even if there are some differences among the drivers' work conditions, these differences do not appear to be so great that they would render a collective action unmanageable."). In the current case, the differences identified by Defendant are not so extensive as to preclude similarly situated status or to interfere with the efficiencies collective treatment can offer. Therefore, this factor weighs in favor of continued collective certification.

    3. <u>Considerations of Fairness, Procedure and Manageability</u>

Finally, considerations of fairness, procedure, and manageability weigh decisively in favor of final certification. Given the size of the collective, the issues to be decided, the uniformity of Defendant's treatment of the collective members and the resources of the collective members, this case is appropriate for collective adjudication. "One of the most important considerations in a decertification analysis is fairness." *Fezard v. United Cerebral Palsy of Cent. Ark.*, No. 4:13-CV-206-JM, 2014 U.S. Dist. LEXIS 199569, at *5 (E.D. Ark. Sep. 3, 2014). Indeed, even where a defendant convinces a court that "some differences in employee job settings and individual defenses weighed against class certification, fairness and procedural considerations [may] still justify collective treatment of the [p]laintiffs' claims." *Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179, at *1 (S.D. Tex. Apr. 21, 2010).

In analyzing this factor, courts should consider the policies behind FLSA collective actions: (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal

Page 16 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

conduct." *Hoffman-LaRoche*, 493 U.S. at 170; *Bobbitt*, 2013 U.S. Dist. LEXIS 150854 at **48–49. "While the FLSA's remedial goals do not alone justify certification of a collective action, they do at least suggest that a close call as to whether Plaintiffs are similarly situated should be resolved in favor of certification." *Curry*, 2019 U.S. Dist. LEXIS 226102, at *18 (Libby, Magistrate J.) (internal quotation marks omitted); *Brennan v. Qwest Communs. Int'l*, No. 07-2024 ADM/JSM, 2009 U.S. Dist. LEXIS 47898, at *22 (D. Minn. June 4, 2009) ("And to the extent that the question presents a close call, concerns for the purposes of the FLSA as a remedial statute tip the balance decidedly against decertification."). "For many plaintiffs, a collective action is the only practical method of adjudicating their FLSA claims." *Nerland*, 564 F. Supp. 2d at 1025.

Defendant required that Named Plaintiff and four Opt-In Plaintiffs sit for depositions in this case, and most Opt-In Plaintiffs filed their Consents to Join in this case almost a year ago. Decertifying this case and dismissing Opt-In Plaintiffs without prejudice would "plac[e] each opt-in plaintiff back at square one, without the benefit of pooled resources," and would require numerous separate lawsuits involving the same question of whether Defendant's standard pay policies violated the overtime wage requirements of the FLSA and AMWA. *See Nerland*, 564 F. Supp. 2d at 1026. "[R]equir[ing] that each plaintiff prove his or her claim . . . individually would waste more judicial time and resources than trying plaintiffs' cases individually would preserve." *Id*.

Further, the issue of how Defendant's pay policies functioned and whether those pay policies violated the FLSA and AMWA are fundamentally the same across collective members. This issue predominates and supports continued certification. *See Senegal v. Fairfield Indus.*, No. H-16-2113, 2018 U.S. Dist. LEXIS 198209, at *29 (S.D. Tex. Nov.

Page 17 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify**

21, 2018) (deny decertification despite the presence of some individualized issues because of the existence of a predominate issue capable of collective adjudication); *Johnson*, 4 F. Supp. 3d at 462 (denying decertification where common questions of law and fact predominate over questions affecting individual class members); *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 812-13 (N.D. Ill. 2010).[1] The primary differences among collective members relates to hours worked—an issue that, as discussed above, does not warrant decertification.

    Not only have Plaintiffs shown there are predominant issues capable of collective treatment through representative evidence, but the size of this collective is not so large as to preclude individual testimony on damage issues that may require it. *See e.g.*, *Hernandez v. Morning Call Coffee Stand, Inc.*, No. 17-2613, 2018 U.S. Dist. LEXIS 116106, at *9 (E.D. La. July 12, 2018). This is in contrast to those cases, including cases cited by Defendant, in which the sheer size of the collective dictates decertification where individual issues must be addressed. *See Big Lots*. 561 F. Supp. 2d at 582 (936 collective members); *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 936 (E.D. Ark. 2012) (256 opt-in plaintiffs); *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 U.S. Dist. LEXIS 56062 (W.D. Wis. May 23, 2011) (over 1,000 opt-in plaintiffs); *Smith v. Heartland Auto. Servs.*, 404 F. Supp. 2d 1144, 1147 (D. Minn. 2005) (collective included 261 current and former store managers from 13 different states, supervised by over 40 different district managers).

---

[1] Citing, among other cases, *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("[T]he plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs [**18] of these theories are inevitably individualized and distinct."); *Chabrier v. Wilmington Finance, Inc.*, No. 06-4176, 2008 U.S. Dist. LEXIS 27761, 2008 WL 938872, at *3 (E.D. Pa. April 4, 2008) ("The need for individual factual determinations is not fatal to certification of a FLSA collective action.").

Page 18 of 20
**Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.**
**U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM**
**Response to Motion to Decertify**

Further, in addressing fairness, procedure and manageability, the rights of a defendant "must be balanced with the rights of the plaintiffs, many of whom would be unable to bear the cost of an individual trial, to have their day in court." *Thompson*, 967 F. Supp. 2d at 1212–22. Even where there are some differences in the factual settings of the plaintiffs, considerations of fairness, procedure and manageability may support continued certification of a class. *Collinge*, 2015 U.S. Dist. LEXIS 35858, at *34; *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 643–645 (S.D.N.Y. 2013) (noting that "the differences among [plaintiffs] are marginal and expected, rather than hyper-individualized and unpredictable"). This is the case here where the issues of Defendant's pay policies are the same across the collective and where the defenses asserted by Defendant are easily managed by minimal subclassification.

"Proceeding collectively always poses certain logistical challenges, and this case is no different in that regard." *Clark*, 44 F. Supp. 3d at 691. However, those challenges do not render a case inappropriate for collective treatment particularly since the Court has wide discretion to manage collective actions and sufficient procedural tools to face any challenges unique to this case, including the creation of subclasses and bifurcation of liability and damages phases of trial, if necessary.[2] The issues here are appropriate for collective treatment, and with respect to those limited issues that may require individualized evidence, the remedial purposes of the FLSA tip the scales in favor of

---

[2] *See Thompson*, 967 F. Supp. 2d at 1222 ("While sifting through the subclaims is an unenviable task, it is better that 1,700 plus trials and, in any event, plaintiffs like defendants are entitled to their day in court.") (internal quotation and editing marks omitted); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 168-69 (S.D.N.Y. 2014) ("In the event that individual damages become an unmanageable issue, the Court can always decertify the class after determination of liability and provide notice to class members regarding how they can proceed to prove damages, or alternatively amend the class definition.").

Page 19 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify

continued certification. Accordingly, Defendant's request for decertification must be denied.

## IV.     CONCLUSION

Plaintiffs are similarly situated in the ways that matter to this case. For the reasons set forth above, Defendant's Motion for Decertification of Collective should be denied in its entirety.

> Respectfully submitted,
>
> **PLAINTIFF STACY WIHEBRINK,**
> **Individually and on Behalf of**
> **All Others Similarly Situated**
>
> SANFORD LAW FIRM, PLLC
> Kirkpatrick Plaza
> 10800 Financial Centre Pkwy, Suite 510
> Little Rock, Arkansas 72211
> Telephone: (800) 615-4946
> Facsimile: (888) 787-2040
>
> Daniel Ford
> Ark. Bar No. 2014162
> daniel@sanfordlawfirm.com
>
> Josh Sanford
> Ark. Bar No. 2001037
> josh@sanfordlawfirm.com

Page 20 of 20
Stacy Wihebrink, et al. v. Life Strategies Counseling, Inc.
U.S.D.C. (E.D. Ark.) No. 4:21-cv-573-DPM
Response to Motion to Decertify